SWEARINGEN v. SWEARINGEN et al.

(Court of Civil Appeals of Texas. San Antonio. March 4, 1914. On Motion for Rehearing, April 1, 1914.)

1. DIVORCE (§ 280*)—INTERLOCUTORY ORDERS —RIGHT OF APPEAL.

Rev. St. 1911, art. 2079, provides that an appeal shall lie from an interlocutory order of the district court appointing a receiver in any cause, and article 2880 declares .that appeals shall also lie from the district courts to Courts of Civil Appeals, from orders granting or dissolving temporary injunctions, etc. Held, that neither section permitted an appeal from an order refusing to appoint a receiver and to grant alimony in a suit to set aside a divorce decree and for a decree granting complainant a divorce and alimony.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 764; Dec. Dig. § 280.*]

2. DIVORCE (§ 206*)—SUIT TO VACATE DECREE —ACTION FOR DIVORCE—INJUNCTION.

In a suit to vacate a divorce decree granted her husband and for a. divorce in her favor, complainant alleged that defendant had not resided in the county six months next preceding the filing of the action in which the divorce was granted, and that no service of citation was ever, in fact, made on her, and prayed that, if the divorce decree be not set aside, she be granted the custody of her child, and judgment be entered dividing the community estate. Her bill contained no allegation that her residence was such as to confer jurisdiction on the court to grant her a divorce. Held, that the court properly refused to grant a temporary injunction restraining defendant from transferring his property pendente lite, under Rev. St. 1911, art. 4658, providing that, in a suit by a wife for divorce, she may have an injunction for the preservation of her rights restraining her husband from disposing of any of his real property pendente lite.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 600–603; Dec. Dig. § 206.*]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by Lela Swearingen against A. J. Swearingen and others to set aside a divorce decree and for a divorce and alimony. From an order denying plaintiff's application for the appointment of a receiver and for the issuance of a temporary injunction and alimony, she appeals. Affirmed.

C. L. Bass, of San Antonio, for appellant. Swearingen & Ward and Joseph A. McCaleb, all of San Antonio, for appellees.

MOURSUND, J. Appellant on November 5, 1913, sued A. J. Swearingen, S. G. Tayloe, S. J. Brooks, William Cassin, P. H. Swearingen, M. H. Burris, and Z. W. Cannon in district court of Bexar county, Forty-Fifth district. Hon. S. G. Tayloe, judge of said court, certified his disqualification to try the case, and requested Hon. W. F. Ezell, judge of the district court of the Seventy-Third district to try the same, and thereafter, by mutual consent and agreement, an order was entered transferring the cause to the district court of said Seventy-Third judicial district.

Plaintiff alleged: That on November 17,

1905, A. J. Swearingen filed suit against Lela Swearingen, plaintiff herein, in the district court of the Forty-Fifth judicial district of Bexar county, praying for divorce, and for division of community property, the alleged ground for divorce being cruel treatment of such character as to render their further living together insupportable to said A. J. Swearingen; that on January 29, 1906, a decree was entered in said cause divorcing A. J. and Lela Swearingen, and vesting in A. J. Swearingen all the community estate; that A. J. Swearingen had not resided in Bexar county for. six months next preceding the filing of his said petition; that the return upon the citation in said suit is untrue, no copy of the same having ever been delivered to Lela Swearingen, as therein stated; that the decree in said suit was wholly based upon testimony which was untrue; that Lela Swearingen was not guilty of any cruel treatment towards A. J. Swearingen; that they were married on December 9, 1889, and resided near Sonora, Tex., until the fall of 1904, three children being born to them, and they accumulated community property valued at from $25,000 to $50,000; that, several months prior to the fall of 1904, A. J. Swearingen conceived a scheme to get rid of Lela Swearingen and their children permanently, and to keep the bulk of the property, the true facts of which scheme were not learned by her until in the summer and fall of 1913; that such scheme was to induce her to agree to the sale of their property under the pretense that he wished to remove to California, near where her eldest brother lived, and invest the proceeds of such property there; that, relying upon such representations, she acceded to his request, and executed deeds conveying their residence and business homesteads; that the remaining community estate was sold; that A. J. Swearingen received for the property sold cash amounting .to between $25,000 and $50,000; that he shipped their household goods to California and proceeded with her and the children to Ft. Worth, where he informed her he would no longer live with her, and that she and the children must go to California without him, but that he intended to permanently provide for and support them; that he purchased tickets for them at an expense of about $200, and gave her $600 in cash; that, by reason of such representations and of the fact that she had no other place to go, there being an estrangement between her and her parents, as he knew, she was induced and caused to comply with his command and to go to California with the children; that, after reaching California, she received letters from him informing her of his desire to be divorced from her, and requesting her to sue for divorce in California, but she declined to do so; that in the fall of 1905 she received a letter from him requesting her to meet him in El Paso, but for her to leave the children, in which let-

ter he represented that he desired such meeting because he intended to make a fair division of their community estate; that he knew she would by that time have been compelled to expend the money he had given her, and he did not intend to have a fair division, but to get her into Texas, so that citation might be served upon her in said cause, and to take advantage of her necessities to procure an unfair division; that she came to El Paso and brought the children with her, meeting him on November 20, 1905, when he told her he had sued for divorce, and again represented that he intended to permanently provide for her and the children, in addition to what he would give her in the division of the community estate, and also represented that he had invested and lost all of such estate except about $1,200, which he offered her on condition that she should sign an agreement reciting that she had received and accepted $2,000 as her part of such estate; that she was induced by said representations to accept his offer and sign the agreement; that said representations were untrue, as he had not lost such property, and did not intend to support her and the children, and, in fact, never contributed anything further towards their support; that, when the decree was entered, much of the community estate was outside the state of Texas, and that within the state was not particularly described therein, and, if such decree is not void for uncertainty, it failed to divide the community property fairly, and did not dispose of the custody of the children; that she did not, and could not, by the exercise of ordinary and due diligence, discover the facts showing that a judgment of divorce had been illegally obtained against her until the summer of 1913, nor did she discover the facts showing such fraudulent conduct of A. J. Swearingen until that time; that, had a fair and equitable division been made, she would have received about $15,000 or $20,000 worth of property; that at the time such decree was entered the community estate was held by various persons for said A. J. Swearingen, and since then, by sales, exchanges, and transmutations of value, the same has become of the value of about $100,000 to $150,000. The property is described in the petition, and it is alleged that the defendants other than A. J. Swearingen claim some interest in a tract of land containing 4,345 acres, for which reason they are made parties, in order that their interests may be determined and set apart to them. Plaintiff also sets up a cross-action for divorce, provided the decree aforesaid be set aside. She prayed that a receiver be appointed to take charge of all property held by A. J. Swearingen in which she has an interest; that alimony be allowed her pending the suit; and that a temporary injunction be granted restraining him from disposing of any of said property pending the suit. She prayed further that, upon final hearing, the decree of divorce be set aside, if the court

can grant her a divorce, and, if not, then that the decree of divorce be permitted to stand, but that she be granted the custody of their minor child, Susan, and that the portion of the decree vesting the community estate in A. J. Swearingen be set aside, as well as all instruments to that effect, and judgment entered dividing such estate and adjusting their property rights.

Copies of the citation and decree are attached as exhibits. The return on the citation is regular; the sheriff stating that he delivered to Lela Swearingen a copy of the writ, together with a certified copy of the petition, on November 21, 1905. The judgment recites service by personal service, and contains a copy of the agreement made between the parties at El Paso on November 21, 1905, in which it was stated that they separated on November 26, 1904, intending that the separation should be final, and that A. J. Swearingen had filed suit for divorce on November 17, 1905, in the Forty-Fifth district court of Bexar county, and that a division of the community property is agreed upon at the special request of Lela Swearingen.

A. J. Swearingen filed a general demurrer and special exceptions urging the two and four year statutes of limitation, also that plaintiff is estopped form reopening the decree on account of her laches. He answered that he had again married; that by his second wife he had two children; that all property he owned was community property of such second wife and himself; and that his wife is a necessary party to the suit. He prayed that no temporary order of any kind be granted.

The other defendants answered, alleging that they jointly owned a half interest in the 4,345 acres of land described in the petition, and A. J. Swearingen the other half interest; that they owe about $65,000 upon said land; and that, if a receiver be appointed or an injunction issued, it would probably result in the loss to them and A. J. Swearingen of said land, as a part of the purchase money would be due in January, 1914, and it would be necessary to arrange to meet the same.

The court, on November 19, 1913, entered an order refusing to grant the application for a receiver, or the issuance of a temporary injunction, or alimony. Plaintiff appealed from such order.

[1] The assignments complaining of the refusal of the court to appoint a receiver and to grant alimony are without merit, because no appeal is permitted from interlocutory orders of that character. Articles 2079, 2080, Rev. Statutes; Turner v. Turner, 47 Tex. Civ. App. 392, 105 S. W. 237. The only question requiring consideration is whether the court erred in refusing to grant a temporary injunction.

[2] Article 4638 provides that at any time during a suit for divorce the wife may, for the preservation of her rights, require the is-

suance of an injunction restraining her husband from disposing of any part of the real and personal estate in the possession of her husband. The Supreme Court, in the case of Wright v. Wright, 3 Tex. 175, construing said article, said: "The terms are emphatic that the wife may require an injunction restraining the husband from the disposition of any part of the property in any manner, and it would seem to be imperative on the courts to issue such writ whenever it may be demanded by the wife. From the language employed, if construed literally, it would appear that but little discretion can be exercised in determining upon the application, and that the writ, when desired, would be one of right, and would issue almost as a matter of course." See, also, Turner v. Turner, supra.

This is a suit in equity to set aside a judgment for divorce; the prayer on the issue of divorce being conditional, as is shown in our statement of the pleadings. The judgment is attacked upon two jurisdictional grounds; one that, at the time A. J. Swearingen filed his petition in said cause, he had not resided in Bexar county for six months next preceding such filing; the other that no service of citation was ever, in fact, had upon Lela Swearingen. Taking the first allegation as true, the court should not have entertained the suit, and would not now entertain the suit if the same had up to this time remained on the docket without a trial, unless A. J. Swearingen filed an amended petition. Michael v. Michael, 34 Tex. Civ. App. 630, 79 S. W. 74; Dickinson v. Dickinson, 138 S. W. 205; McLean v. Randell, 135 S. W. 1120. Conceding, therefore, only for the purposes of this appeal, that the petition makes a prima facie case for setting the judgment aside upon that ground, it would become the duty of the court not to entertain the petition, but to dismiss the same because of want of jurisdiction. The question then arises whether appellant can keep it from being dismissed by reason of having filed a cross-action, in which she does not allege that she, at the time of filing the same, had been an actual bona fide inhabitant of the state for 12 months and of Bexar county for 6 months next preceding such filing, as required by article 4632 as amended by chapter 97 of the Acts of 1913. Appellant relies upon the case of Charlton v. Charlton, 141 S. W. 290. In that case no issue was made as to the jurisdiction of the court to try plaintiff's case upon the merits, and, having acquired jurisdiction, it was deemed proper to permit defendant to assert a cross-action without alleging the matters concerning residence required of a petitioner who is plaintiff. We think the decision was correct, but we will not hold that, when neither the plaintiff nor defendant has the qualifications as to residence specified in the statute, the court can grant a divorce. If the plaintiff's petition cannot be entertained, the court has no jurisdiction to pass upon the merits of his case, and a

cross-action could not be entertained unless the same contained the allegations as to residence which are required of a party if such party is plaintiff. Note to Succession of Benton, 59 L. R. A. 149; Fisk v. Fisk, 24 Utah, 333, 67 Pac. 1064; Abele v. Abele, 62 N. J. Eq. 644, 50 Atl. 686; Pine v. Pine, 72 Neb. 463, 100 N. W. 938, 9 Ann. Cas. 1198. The petition therefore, taken as true, presents facts such as would not authorize the court to grant appellant a divorce if the judgment be set aside.

We conclude, therefore, the court was justified in holding that under the facts shown to exist by the sworn petition, the benefits given solely by the laws relating to suits for divorce could not be invoked by Lela Swearingen.

The petition, when considered in connection with our general injunction statute, presents no case for relief by injunction. It is not made to appear that A. J. Swearingen is doing any act respecting the subject of litigation, or threatens or is about to do some act or is procuring or suffering the same to be done in violation of the rights of appellant which would tend to render judgment ineffectual, nor that irreparable injury is threatened to real or personal property. All the property described in the petition, except two vendor's lien notes aggregating about $8,000, consists of real estate situated in Bexar county, and we infer from the allegations that the record title of all of same is in appellee. The filing of lis pendens notice could be, and doubtless has been, resorted to by appellant to protect herself against transfers of such real estate, which, it appears from the allegations, is of great value.

In addition, courts do not look with favor upon suits to set aside a divorce decree brought eight years after the rendition of such decree, and after the party procuring same has married again, and has children by such marriage, and a strong showing should be made before an appellate court would be justified in holding that the trial court abused his discretion by refusing a temporary injunction.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant ignores the fact that the requirements as to residence of a petitioner for divorce must be proved as well as alleged. Appellant appears to have the idea that such allegations are mere matters of form, which, if made by either party, confer jurisdiction, and then, having served such useful purpose, may be quietly discarded. In the Charlton Case the court said: "The purpose of the statute was to protect, not only the defendant in divorce proceedings, but also the interests of society, against fly-by-night divorce suits instituted by birds of passage, who, with no stability of residence, might use the courts to procure divorces upon false grounds, and

sometimes by collusion with the opposite party." Yet appellant contends that, if neither party has the residential qualifications prescribed by statute, one of them can bring a divorce suit, and, if the other files a cross-action, the court can grant the cross-action. By collusion, which is always very difficult and frequently impossible to prove, "fly-by-night" divorces could be obtained without any difficulty, and our laws set at naught. Persons residing in other states, if desirous of being divorced, could easily arrange for one to file suit in Texas for divorce, and for the other to go to Texas when the court is in session, file a cross-action, and obtain the divorce.

Appellant says that "the rule is to prevent the plaintiff from doing wrong, not the defendant; to prevent the plaintiff from collusion, fraud, tricks." This is a strange and wholly unwarranted conception of the purpose of the law. As collusion necessarily implies the participation of both parties, it is impossible to see why one would be less guilty than the other. Appellant appears to think that a party who is plaintiff should not be given a divorce without alleging and proving the statutory requirements as to residence, because it might permit of collusion and fraudulent divorces, but, if the collusion and fraud be carried a step further, and suit is filed by one not having the necessary requirements, and the other, who also does not possess the necessary requirements as to residence, files a cross-action, then the statute can be successfully circumvented, and the collusion and fraud will no longer be an abomination in the eyes of the law. Such is not our conception of the law, nor did the court announce any such rule in the Charlton Case. In that case evidence was heard, and, if it had not shown that plaintiff's allegation as to residence was sustained, the court would not have omitted such an important fact in passing upon the case. We repeat that no issue was made in the appellate court as to jurisdiction based upon the theory that neither party had the statutory qualifications as to residence; but the case was treated and discussed as one where plaintiff had such qualifications, but defendant did not. In this case, the sworn petition affirmatively alleges that A. J. Swearingen did not, at the time he presented his petition, have the qualifications as to residence prescribed by law. This allegation is not denied.

It is not alleged that Mrs. Swearingen had such qualifications. Yet appellant wants the case treated as a divorce suit, so far as granting a temporary injunction is concerned. She prays that the divorce decree be not set aside, unless the court can grant her a divorce, and, having pleaded facts showing that the court cannot permit the maintenance of a suit by her for divorce, complains because a temporary injunction was not granted on the ground that this is a divorce suit. If a petition for divorce is filed which does not show the necessary facts as to residence, could it be contended that the court ought to grant plaintiff a temporay injunction? If a cross-action is filed which shows that the court acquired no jurisdiction on account of plaintiff's residence, and does not show that it had any by reason of the residence of defendant, should the court grant an injunction because it is a divorce suit? These questions must certainly be answered in the negative. Appellant quotes the rule that: "A court of equity which has obtained jurisdiction of a controversy on any ground, or for any purpose, will retain jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter." This is discussed at great length and many authorities cited, but appellant begs the question. If it be assumed that, when plaintiff in a divorce suit alleges the statutory requirements as to residence, the court has jurisdiction of the case, and retains it, even though the evidence shows that such allegation is false, then the quoted rule may be applied, but that is assuming the whole question. The statute requires the fact of residence and not the mere allegation thereof, and, if the proof shows that the allegation as to residence is false, plaintiff cannot maintain his suit, and the case should be dismissed; Speer on Married Women, § 343; Nelson on Divorce and Separation, §§ 48, 731; Gamblin v. Gamblin, 52 Tex. Civ. App. 479, 114 S. W. 408; McLean v. Randell, 135 S. W. 1117; Dickinson v. Dickinson, 138 S. W. 205. Nor can we concede that allegations which, if established, may be sufficient to set aside a decree for divorce are equivalent to a suit for divorce, and that therefore the provisions of the divorce statutes with reference to injunctions may be applied. Such, in effect, is appellant's contention made at the conclusion of the discussion on jurisdiction of courts of equity.

Appellant objects strenuously to our mention of facts disclosed in one of the sworn answers filed in this case, contending that, as the trial court held the petition insufficient to require the granting of a temporary injunction, we should not give any weight to the answers. The law contemplates that, when a sworn answer is filed, the question whether a temporay injunction should be granted will be determined upon both bill and answer. Article 4645, Revised Statutes 1911. If the court's ruling is correct upon the bill and answer, the judgment should be affirmed. We think the petition, when considered by itself, shows its insufficiency to entitle appellant to such relief, but see no impropriety in mentioning the allegations of the answer, which are proper to be considered, nor in holding that such facts present a case in which a strong showing should be made before we would be justified in holding that the trial court abused its discretion.

The motion is overruled.